**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 24-22514-Civ-BECERRA/TORRES

GREGORY PALERMO, as Trustee of the
PETER R. PALERMO QUALIFIED
PERSONAL RESIDENCE TRUST,

*Plaintiff*,

v.

UNITED STATES OF AMERICA,

*Defendant*.
__________________________________________/

***REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND THE UNITED STATES' CROSS-MOTION FOR SUMMARY JUDGMENT***

This case is primarily about whether real property that a decedent placed in a qualified personal residence trust, and continued to occupy after the trust's term expired, was still includable in his gross estate under Section 2036(a)(1) of the Internal Revenue Code. If so, the property took a stepped-up basis under Section 1014 and the estate does not owe more capital gains taxes on its post-death sale, nor a 40% gross-valuation-misstatement penalty assessed by the IRS. The parties are asking the Court to decide the question now, on summary judgment as a matter of law. On this record, however, the Court cannot do so entirely. Whether the decedent retained the possession or enjoyment of his former home, the dispositive fact on which

inclusion turns, depends on evidence the parties genuinely dispute, for which a trial will be required.

On the other hand, a second theory the Plaintiff presses, inclusion as a "homestead property" under Section 2033, fails as a matter of law. Summary judgment in favor of the United States is appropriate on that claim. Additionally, summary judgment is also appropriate on newly raised arguments the Plaintiff failed to exhaust during the administrative phase of the dispute. For the reasons that follow, the Court recommends that Plaintiff's motion be Denied, and the United States's motion be Granted in part and Denied in part. The case should proceed to trial on the question of inclusion under Section 2036(a)(1) and the issues that depend on it.

## *I. BACKGROUND*

### *A. <u>The qualified personal residence trust and its expiration</u>*

A qualified personal residence trust, or QPRT, is a creature of statute and Treasury regulation as set forth in 26 U.S.C. § 2702(a)(3)(A)(ii) and Treas. Reg. § 25.2702-5(c). The device permits a homeowner to transfer a residence to his beneficiaries at a reduced gift- and estate-tax cost while retaining the right to live in the home, rent free, for a fixed term of years. During that term, which is pre-determined by the homeowner, the property is held for the grantor's benefit even though title passed to the remainder beneficiaries. At the term's end, because the grantor had to relinquish all possession and enjoyment of the property, he must either vacate the property entirely or pay rent at fair market value.

The bargain carries a well-known risk: the tax advantage is earned only by surviving the term. If the grantor dies during the term, the property is drawn back into the gross estate with all the resulting estate tax consequences that follow. But if the grantor survives it, the property passes to the beneficiaries free of further estate tax. *See, e.g., Badgley v. United States*, 957 F.3d 969, 972 (9th Cir. 2020); *Stone v. Stone*, 157 So. 3d 295, 300-01 (Fla. 4th DCA 2014).

The facts of the transfer are undisputed. Magistrate Judge Peter R. Palermo created the Peter R. Palermo Qualified Personal Residence Trust on February 26, 2002, and conveyed his Pinecrest, Florida residence (the "Property") to the Trust by deed dated July 2, 2002. The Trust was irrevocable and had a fixed term of five years, measured from the date the residence was transferred. By its own terms, the term expired on July 2, 2007. The parties do not dispute that the five-year term ran its course and that Judge Palermo was alive when it ended.

***B. <u>The post-term leases and the 2009 lease</u>***

After the QPRT term expired, the relationship between Judge Palermo and the Trust ostensibly became that of tenant and landlord. On July 2, 2007, the Trustee, Judge Palermo's son, Gregory Palermo, leased the Property to his father for one year at $2,900 per month. A second one-year lease followed on July 2, 2008, at the same rent.

Things changed, however, on February 16, 2009, when the Trustee and Judge Palermo executed a third instrument styled a "Lease Agreement," which purported to "modif[y], amend[] and supersede[]" the two prior leases and to grant a 99-year

term commencing retroactively on July 2, 2007. The 2009 instrument provided that the lease would terminate on the earliest of its term: the death of the tenant, the tenant's permanent incapacity, or the parties' mutual agreement. The apparent motivation for this arrangement was the desire to maintain homestead protection on the property for property tax purposes.

The rental arrangement continued thereafter for six years until Judge Palermo died on November 13, 2015. None of the termination conditions other than death occurred. A notice of termination was recorded on February 22, 2016, and the Property was sold that same month for $1,875,000.

Two components of the record shape the analysis. First, the Plaintiff concedes that the retroactive feature of the 2009 lease—its purported backdating to 2007—is "void and violative of state law," and that the lease's effective date was, at the earliest, February 16, 2009. Second, the Plaintiff affirmatively asserts, and offers an appraisal to prove, that the rent under each lease agreement was "substantially below the fair market value" of the Property: $2,900 to $3,013 per month paid against an appraised rental value of $4,400 to $5,800. Plaintiff concludes that the resulting leasing arrangement was "not an arm's length" transaction.

***C. <u>The tax positions and this litigation</u>***

The Trust reported the 2016 sale and claimed a basis stepped up to the Property's date-of-death fair market value under Section 1014 of the Code. This is a step-up (that significantly reduces the capital gains tax) available only if the Property was *includable* in Judge Palermo's gross estate notwithstanding the purported

transfer of the property through the QPRT.[1] The Internal Revenue Service, however, determined that the Property was not in the gross estate, disallowed the step-up, recomputed the gain, and assessed an accuracy-related penalty under Section 6662. The Trust paid but sued in District Court for a refund where jurisdiction lies under 28 U.S.C. § 1346 ("The district courts shall have original jurisdiction . . . [of] any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority . . . .").

The litigation posture is unusual. The Plaintiff Trustee is the party arguing *for* inclusion of the Property in the gross estate, because inclusion yields a stepped-up basis that eliminates the taxable gain and the penalty. Meanwhile the United States argues *against* inclusion. Ordinarily the taxpayer would be defending the QPRT's validity as a vehicle to reduce estate or gift taxes that would otherwise be due. The

---

[1] Under I.R.C. § 1014(a), property acquired from a decedent takes a basis equal to its fair market value on the date of death (or the alternate valuation date, six months later, if the estate elects it under § 2032). This resets ("steps up") the heir's basis from what the decedent originally paid to the date-of-death value. *See, e.g., Janis v. C.I.R.*, 469 F.3d 256, 261-62 (2d Cir. 2006) ("The 'step-up' . . . is a shorthand for the rule that, even if the decedent acquired property at a fraction of its fair market value at his death, it is the value at death that determines the cost basis to his heirs when the income tax due on its subsequent sale is calculated. This rule avoids a double tax on the appreciation in the value of the property that occurred prior to death. The estate tax, which is based on the fair market value at the time of death, taxes this unrealized capital gain. If the cost basis to the heirs was the acquisition cost to the decedent, the unappreciated capital gain would be taxed a second time. In order to avoid this result, the cost basis of the property when it is later sold is the fair market value at the time of death, i.e., a step-up from the cost of the [property] to the decedent. The only gain that is taxed on its subsequent resale is that incurred as a result of an increase in value after the date of death.").

United States argues, however, that the Trustee is doing the opposite because the estate tax benefit was nullified by interim changes in the estate tax rates. So now the Trustee wants a do-over, in effect, to take advantage of the stepped-up basis for the sale of the property contrary to the original design of the QPRT. The ordinary alignment of an estate-tax dispute is thus reversed.

This is also not the parties' first appearance. In 2023, the Court (Bloom, J.) dismissed the Plaintiff's complaint without prejudice for lack of subject-matter jurisdiction. *Palermo v. United States*, 2023 WL 5015483 (S.D. Fla. Aug. 7, 2023). Plaintiff has since cured that defect and the court now has jurisdiction to adjudicate the dispute.

## *II. LEGAL STANDARD*

Summary judgment is warranted only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence would permit a reasonable factfinder to return a verdict for the non-moving party, and the Court may not weigh the evidence or make credibility determinations; those are the functions of trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). On cross-motions, the Court evaluates each motion on its own terms and draws all reasonable inferences against the party whose motion is under consideration. That the parties have filed cross-motions does not itself establish that there is no genuine issue of material fact; if the record would support a verdict for either side depending on inferences a

factfinder must draw, *neither* motion may be granted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Two features of this case bear on that standard. First, in a refund suit the taxpayer bears the burden of proving its entitlement to the refund. So here the Plaintiff has the burden of proving that the Property was includable in the gross estate. But that burden cuts against summary judgment for the Government as much as for the Plaintiff: if the Plaintiff has come forward with evidence from which a reasonable factfinder could find inclusion, the Government is not entitled to judgment that the Property is excluded.

Second, the inclusion question here is not a pure question of law. Certainly the legal characterization of a transaction is a legal question. *Fender v. United States,* 577 F.2d 934, 936 (5th Cir. 1978). But findings of fact critical to determining if property or interests are included in the estate are reviewed as mixed questions of law and fact. *Estate of Whitt v. C.I.R.*, 751 F.2d 1548, 1557 (11th Cir. 1985); *Estate of Stewart v. Commissioner*, 617 F.3d 148 (2d Cir. 2010) (whether an implied agreement of retained enjoyment existed is a question of fact reviewed for clear error). And that is particularly true with respect to determinations of fair market value that are "mixed question[s] of fact and law" such that "the factual premises are subject to a clearly erroneous standard while the legal conclusions are subject to *de novo* review." *Savannah Shoals, LLC v. Comm'r of Internal Revenue*, No. 24-12661, 2026 WL 2056291, at *3 (11th Cir. July 16, 2026).

## *III. ANALYSIS*

### *A. <u>Plaintiff's Section 2033 Theory Fails as a Matter of Law</u>*

Section 2033 includes in the gross estate "the value of all property to the extent of the interest therein of the decedent at the time of his death." 26 U.S.C. § 2033. The Plaintiff argues in his motion for summary judgment that the Florida homestead exemption coupled with the 99-year lease agreement gave Judge Palermo an ownership interest this statute reaches. As a matter of law, however, Plaintiff's theory does not hold up to scrutiny. Summary judgment on this issue should be entered, but in favor of the United States.

The crux of Plaintiff's argument lies with the language in the implementing regulation for section 2033, Treas. Reg. § 20.2033-1(b). That regulation includes a "homestead" provision according to him (that "[p]roperty subject to homestead or other exemptions under local law is included in the gross estate") and that if this language means anything it means that Florida's decision to approve a homestead application for Judge Palermo *ipse dixit* means that the property is part of the gross estate. As Plaintiff puts it, "[t] he qualification for homestead status provided [him] with significant creditor protection under state law and a substantial reduction in real estate taxes. . . . As a life tenant, [he] had the sole present possessory interest to enjoy all ordinary uses of the Pinecrest Property until his death. . . . In Florida, a life tenant is entitled to the use and enjoyment of their estate during its existence, as established in *Schneberger v. Schneberger,* 979 So. 2d 981, 983 (Fla. 4th DCA 2008) (quoting *Sauls v. Crosby,* 258 So. 2d 326, 327 (Fla. 1st DCA 1972)). Effectively, [he]

held all essential incidents of outright ownership of the Pinecrest Property." [D.E. 30 at 5].

That may be true in the normal course, but these general state property rules that Plaintiff points to, and the cases underlying them, have no application to Judge Palermo once he transferred the property to the QPRT in 2002. At that point, any retained or reversionary ownership interest in the property extinguished upon expiration of the five-year term. That transfer triggered very specific federal tax rules. And federal tax law, not state-law labels, determines which state-created interests are taxed: "State law creates legal interests and rights," but "[t]he federal revenue acts designate what interests or rights, so created, shall be taxed." *Morgan v. Commissioner*, 309 U.S. 78, 81 (1940). Florida's decision to deem a long-term lessee the equitable owner "for the purpose of homestead exemptions" fixes a state-law label; it does not answer the federal question of beneficial ownership that section 2033 addresses. The Florida authorities the Plaintiff invokes decide only entitlement to the ad valorem *exemption*—not gross-estate ownership. *See Higgs v. Warrick*, 994 So. 2d 492, 493 (Fla. 3d DCA 2008); *Robbins v. Welbaum*, 664 So. 2d 1, 2 (Fla. 3d DCA 1995); *Furst v. Rebholz*, 361 So. 3d 293, 298 (Fla. 2023). And "homestead" in Florida means different things in different contexts; an interest that qualifies for the tax exemption is "not necessarily" homestead for other purposes. *Stone*, 157 So. 3d at 304.

Plaintiff's theory also ignores the context and design of the regulation itself. The regulation has two subsections. The first states the operative rule: the gross estate "includes under section 2033 the value of all property . . . beneficially owned

by the decedent at the time of his death." Treas. Reg. § 20.2033-1(a). The second is captioned "Miscellaneous examples," and it collects five of them. A cemetery lot the decedent owned is included, but only at the salable value of the part not designed for the interment of the decedent and his family. Property subject to homestead or other exemptions under local law is also included. Notes and other claims the decedent held are included even though his will cancels them. And interest and rents accrued at death are included, as well as dividends declared before death but uncollected at it. *Id.* § 20.2033-1(b).

Those five sentences share a single feature. Each begins with something the decedent owned, and each then refuses to let a characteristic of that property (i.e., its dedication to burial, its exemption under state law, its cancellation by will, its uncollected posture) operate to take the property *out* of the estate. The cemetery-lot sentence does not give a decedent a grave; it caps the value of one he had. The cancelled-note sentence does not create a claim; it preserves one he held against a testamentary attempt to erase it. Neither sentence confers anything. Each shuts a trap door through which to lose it.

The homestead sentence is built the same way, and its preposition gives it away. Property "subject to" a homestead exemption is property burdened by one, and a person is subject only to what constrains what he already has. The sentence therefore assumes the beneficial ownership that subsection (a) independently requires, and it answers a different question: whether a protection conferred by state

law survives as an exclusion from the federal gross estate. It does not. What the sentence never does is supply the ownership it assumes.

In other words, this provision is an anti-avoidance rule of inclusion, not a rule that creates ownership. It presupposes that the decedent beneficially owned the property and then denies him the exemption as a shield; it does not convert a non-owner into an owner. The point is not novel as illustrated by the Plaintiff's heaviest federal authority, *Estate of Johnson v. Commissioner,* 718 F.2d 1303 (5th Cir. 1983). There a decedent indisputably owned Texas homestead property, and the dispute was whether the surviving spouse's homestead rights reduced the value at which that property entered her estate. The Tax Court, "[r]ecognizing that Treasury Regulation 20.2033-1(b) requires the *inclusion* of the homestead property in the gross estate," treated the question as one of valuation: "[t]he fact that property is *included* in gross estate . . . has no bearing on determining the value at which the interest is to be included." 77 T.C. 120, 125 (1981) (emphasis added), *quoted at* 718 F.2d at 1310-11.

On appeal the Fifth Circuit reversed, but it did so relying on section 2034 (the dower-and-curtesy substitute) and expressly declined to reach the section 2033 issue. 718 F.2d at 1312. And that was deemed more persuasive because "[i]t is well settled, for purposes of the Federal estate tax, that while we must look to state property law to determine the nature of the decedent's interest in property, taxation under federal law is not determined by local characterization. . . . However, this rule has no application in cases in which the federal statute makes its operation dependent upon

state law." *Ibid.* (citations omitted). The Court held that section 2034 fit that exception so it did not have to address the "generic" section 2033.

Significantly for our purposes, neither court used the regulation to decide who owned the land. And neither had to, like in every other case on this topic, because ownership is not deemed an interest conferred by the regulation itself. Indeed neither party has identified, and the Court has not located, a decision holding that the homestead sentence supplies an ownership interest that section 2033 does not otherwise reach. In the absence of such authority, a plain reading of the regulation that Plaintiff hangs its hat on supports the United States' reading of the regulation, not Plaintiff's.

Florida law points in the same direction. The statute on which the Plaintiff's homestead status depends deems a long-term lessee to hold "legal or beneficial and equitable title" only "for the purpose of homestead exemptions from ad valorem taxes and no other purpose." Fla. Stat. § 196.041(1) (emphasis added); *see, e.g., Prewitt Mgmt. Corp. v. Nikolits,* 795 So. 2d 1001, 1003 (Fla. 4th DCA 2001) (quoting the same limitation). The Third District has read the provision exactly as written: "[f]or homestead exemption purposes only." *Robbins,* 664 So. 2d at 2. The Legislature thus created a title that exists for one purpose and disclaimed every other. The Plaintiff asks this Court to give that title the second purpose the Legislature withheld. That we cannot do.

If that were not enough, there is a further problem with resting a federal ownership determination on a county exemption approval. In Florida, that approval

does not conclusively establish even the exemption. The Florida Supreme Court has held that a property appraiser's own classification of a residence as owner-occupied "did not establish" entitlement to the exemption, because the back-assessment statutes "show that mistaken classifications do not control and can be corrected"—for as long as ten preceding years. *Furst,* 361 So. 3d at 300 (citing Fla. Stat. §§ 196.161(1)(b), 193.155(10)). The taxpayer in *Furst* held an approved exemption on the whole of his property for ten tax years and proved entitled to it on eighty-five percent. 361 So. 3d at 296, 300. And in *Prewitt*, the Value Adjustment Board granted the exemption and the courts took it back. 795 So. 2d at 1002, 1005. These examples thus highlight that a determination that Florida may revisit for a decade cannot possibly settle a federal tax consequence for good in a given taxable year.

The authorities the Plaintiff invokes also underscore the point from a different angle. The taxpayer in *Higgs* had conveyed his trust to his heirs and held nothing but a lease; he received the exemption all the same. 994 So. 2d at 493. The settlors in *Robbins* had relinquished "absolutely and forever" every right to the principal and income of their trust; yet they received it too. 664 So. 2d at 1. If approval of a homestead application established ownership for federal tax purposes, each of those taxpayers would have "owned" a residence he had already given away. Makes little sense.

As a result, we conclude that the mechanics of the lease adds nothing to this federal tax issue. The Plaintiff concedes the 99-year lease was void insofar as it reached back to 2007, and effective at the earliest in February 2009. A leasehold that

began in 2009 and terminated at the tenant's death in 2015 was, at most, a terminable estate that expired with him. So an interest that ends at death is not an interest the decedent holds "at the time of his death" in any sense that survives to be taxed under section 2033. *Cf.* Treas. Reg. § 20.2033-1(a). On the undisputed record, Judge Palermo held no section 2033 ownership interest in the Property at his death following the 2002 QPRT.

In sum, Plaintiff's theory on his reading of section 2033 is rejected as a matter of law. No genuine issue of fact precludes judgment in the United States' favor on this score. So to that extent, and that extent only, the Plaintiff's motion fails while the United States' motion is well taken and summary judgment should be entered in its favor.

### ***B. Whether the Property is Includable Under <u>Section 2036(a)(1) Turns on Genuinely Disputed Facts</u>***

Section 2036(a)(1) includes in the gross estate property the decedent transferred during life (other than by a bona fide sale for full consideration) if he retained, for a period that does not in fact end before his death, "the possession or enjoyment of, or the right to the income from, the property." 26 U.S.C. § 2036(a)(1). The provision reaches transfers that are "essentially testamentary," meaning those that leave the transferor a significant interest in or enjoyment of the property until death. *Badgley*, 957 F.3d at 972-74. To escape it, a grantor must "absolutely, unequivocally, irrevocably, and without possible reservations, part[ ] with" possession, enjoyment, and income. *Id.* at 972 (quoting *Commissioner v. Church's Estate*, 335 U.S. 632, 645 (1949)). The inquiry looks to "the substance of the retained

interest"; "[l]abels are not dispositive." *Id.* at 977. And the retained interest need not be written down: it may rest on an "implied agreement or understanding" at the time of the transfer that the grantor would keep possession or enjoyment. *Estate of Stewart*, 617 F.3d 148, 153, 156 (2d Cir. 2010); *see also Estate of Maxwell v. Comm'r,* 3 F.3d 591, 593-94 (2d Cir. 1993); *Estate of Abraham v. Comm'r,* 408 F.3d 26, 39 (1st Cir. 2005).

For transfers of a residence, the case law marks two poles, with this case falling between them. At one pole, a grantor who transfers a home but continues to live in it rent free, to the exclusion of the donee, has retained enjoyment, and the property is included; the "lease" is a fiction. *See, e.g., Guynn v. United States*, 437 F.2d 1148, 1150 (4th Cir. 1971); *Estate of Tehan v. Comm'r,* T.C. Memo. 2005-128 (transferor paid no rent, paid the expenses, treated the home as his own; included in estate).

At the other pole, a grantor who genuinely surrenders the home and pays *fair market* rent to occupy it has not retained enjoyment, and the property is excluded. An example of this is found in a case directly on point, *Estate of Riese v. Commissioner*, T.C. Memo. 2011-60, where the decedent transferred her residence to a QPRT, *survived the term*, and continued to occupy the home. The Tax Court held the residence was *not* includable because there was no understanding, express or implied, that she could occupy rent free for life; the arrangement was to pay fair market rent, and she died before the mechanics were completed.

Between rent-free occupancy and fair-market rent lies *below-market* rent, which is where this case sits. To illustrate that situation, take the case of *Estate of*

*Disbrow v. Commissioner*, T.C. Memo. 2006-34. There, the decedent transferred her residence to a family entity and leased it back, and the Tax Court held the residence *includable* under Section 2036(a)(1) *despite* the leases and the rent, because the rent was "less than fair rental value," the entity was "not operated for profit" but served "solely as [a] conduit" for the home's expenses, and the decedent kept "the same quiet enjoyment" she had always had. Paying rent did not save the transfer; paying *below-market* rent to a non-arm's-length family entity was itself evidence that the transferor never really parted with possession or enjoyment.

Now back to this case. The Plaintiff tries to stake out the position that the stipulated record is all we need to find that Judge Palermo paid below-market rent and retained full possession and enjoyment of the property. Plaintiff insists that the rent was substantially below market and that the leasing was "not arm's length" (because the lease was an inside-deal between father and son). It is true that a reasonable factfinder could find that these record facts are like *Disbrow*: that the below-market, non-arm's-length tenancy was continued ownership-like enjoyment in substance, so the Property is includable. Plaintiff relies on expert appraisal evidence in the record to support its burden. At a minimum, in that circumstance the United States could not obtain summary judgment of exclusion on a record that, taken in the light most favorable to the Plaintiff, fits a case in which the residence was included.

But the inferences run the other way too. Drawing every inference in the Government's favor, as the Court must in ruling on the *Plaintiff's* motion, a reasonable factfinder could also find that this is *Riese*: that Judge Palermo genuinely

surrendered the home at the end of a real, five-year term he survived; that he signed written leases and actually paid material rent, unlike the rent-free grantors in *Guynn* and *Tehan*; and that the Trust exercised the incidents of ownership, leasing the home and ultimately selling it. On that view the Property is excluded.

What separates *Disbrow* from *Riese* is not law but fact—and those facts are disputed in this record. A factfinder would be required to determine (1) whether the rent was so far below market as to reflect retained enjoyment, or was a real if imperfect bargain; (2) whether the parties' dealing was arm's length in substance; (3) whether the parties understood from the outset that Judge Palermo would keep the home for life; and (4) whether the QPRT's five-year term was a genuine surrender or merely a way-station in a lifetime plan for Judge Palermo to continue to retain possession and enjoyment of the property.

In particular, whether an implied agreement of retained enjoyment existed is itself a question of fact. *Stewart*, 617 F.3d at 153. Even the void 2009 attempt to backdate a 99-year lease to the term's expiration cuts both ways: a factfinder could read it as proof that the family always intended unbroken occupancy, or as a clumsy drafting move of no substantive significance. That it can be read both ways is precisely why it cannot be resolved on summary judgment.

In this respect, Plaintiff as the movant seeking to show inclusion of the estate as a matter of law failed to meet its burden of showing that judgment was due as a matter of law in its favor. The United States for its part suffers the same fate; it has the burden of showing that no genuine issue of fact exists to preclude finding that the

estate was no longer included in the estate. But given this record, it cannot meet that burden because there is far more than a scintilla of evidence supporting Plaintiff's position. A trial on these issues is required.

### *C. Two of the Plaintiff's Theories—Cessation of Use and Reasonable Cause—are Barred Under the Variance Doctrine*

Although the preceding aspect of the United States' motion for summary judgment cannot be granted, two of the Plaintiff's theories should be rejected as a matter of law. A tax-refund suit is confined to the grounds "fairly contained within the refund claim," and a federal court has no jurisdiction over a theory that substantially varies the legal or factual bases the taxpayer presented to the Service. *Charter Co. v. United States*, 971 F.2d 1576, 1579 (11th Cir. 1992); *Ginsburg v. United States*, 17 F.4th 78, 84-85 (11th Cir. 2021). The Plaintiff's administrative claim sought a refund on three grounds: that the Property was includable because Judge Palermo paid less than fair market rent, that it qualified for the homestead exemption, and that the 99-year lease operated as a life estate. The first is squarely the section 2036 retained-enjoyment theory that must be tried, as discussed above. It was fairly presented, and the variance doctrine does not touch it. The second and third were also fairly presented, but for the reasons already addressed judgment should be entered in the United States' favor on the arguments that rest on the Plaintiff's reading of section 2033.

But the Plaintiff has tried to inject two other theories into the case for the first time in this litigation. The first is that the QPRT lost its qualified status because, before Judge Palermo died, the residence ceased to be used as his personal residence.

That theory rests on facts going to the guest-house occupancies of a Dr. Smith and the Judge's former law clerk, Mr. Angueira—facts the Plaintiff never presented to the Service. The second is a reasonable-cause defense to the section 6662 penalty resting on professional advice the administrative claim never identified. Both are new. And because the Service is under no duty to "hazard a guess" about a claim that was never raised, *Charter Co.*, 971 F.2d at 1579, neither is properly before us now.

That long-established principle, codified at 26 U.S.C. § 7422(a), requires far more of a taxpayer seeking a refund from the Service. As the Eleventh Circuit put it, "[a]lthough crystal clarity and exact precision are not demanded, at a minimum the taxpayer must identify in its refund claim the 'essential requirements' of each and every refund demand." *Id.* at 1580 (citing *Sanders v. United States*, 740 F.2d 886, 890 (11th Cir. 1984) (taxpayer must "detail his claim" and "state the exact basis of his claim")); *see also Alabama By-Products Corp. v. Patterson*, 258 F.2d 892, 900 (5th Cir. 1958) (taxpayer must state "[a]ll grounds," and "the Commissioner can take the claim at its face value and examine only those points to which his attention is necessarily directed"); *Stoller v. United States*, 444 F.2d 1391, 1393 (5th Cir. 1971) ("The Commissioner could not have known these facts without an investigation, and there was nothing to put him on notice that a further investigation was needed."). The statute is not a pleading rule the Service may relax. It is the condition on which the United States has consented to be sued.

*Charter* itself forecloses the Plaintiff's position that it has satisfied those requirements. The taxpayer there challenged the Service's allocation of purchase

price to an oil refinery, and it expressly identified three collateral items that a reallocation would affect—an airplane, a depreciable refinery asset, and stock in a shipping company. It said nothing about the marketing assets it had also sold. On appeal it argued that the omitted claim "derive[d] solely" from the ground it had raised, and it tried the point four more ways: the claim "flow[ed] directly" from that ground, was "integral to" it, was "inextricably connected" with it, and was its "inevitable corollary." 971 F.2d at 1579. But the Eleventh Circuit rejected every formulation. "The law requires the taxpayer to do more than give the government a good lead based upon the government's purported ability to infer interconnectedness." *Id.* at 1579-80.

That holding controls here. The omitted claim in *Charter* was an arithmetic consequence of the ground the taxpayer had presented: shifting purchase price toward the refinery necessarily shifted it away from the marketing assets. The connection was not merely available to be inferred; it was compelled. Plaintiff's cessation-of-use theory is not like that. It does not follow from below-market rent by arithmetic or by anything else. It rests on a different regulation, a different factual predicate, and the conduct of two men whose names appear nowhere in the administrative claim. If the taxpayer in *Charter* could not reach a theory that its own claim made mathematically inevitable, then the Plaintiff here cannot possibly support one his claim never even suggested.

A recent decision in this District applies the rule to a closer analogue. In *Shleifer v. United States*, the taxpayers claimed a depreciation deduction for a private

aircraft on one schedule of an amended return. When the Service disallowed it, they argued in litigation that the same deduction was allowable on a different schedule as an unreimbursed partnership expense. 2025 WL 1635367, at *4-*7 (S.D. Fla. June 9, 2025). They pressed precisely the point the Plaintiff presses here: the litigation theory involved "the same tax year, the same asset, . . . the same depreciation calculation, and most crucially, . . . exactly the same overpayment" as the administrative claim. *Id.* at *5. The court accepted that all of this was true yet held the theory barred anyway, because entitlement to it turned on elements the Service had never been asked to examine. *Ibid.* Sameness of property, of tax year, and of dollar amount is not what section 7422(a) requires. Only sameness of grounds is, as the text of the regulation makes clear, yet that is what is absent from Plaintiff's refund claims.[2]

Any fair reading of this record shows that no facts and no theory were presented to the Service concerning the alleged cessation of use of the Property. To preserve that claim the Plaintiff would have had to identify the regulation on which he now relies, state that the residence had ceased to serve as Judge Palermo's personal residence, and supply the facts said to establish it. These would all be the essential requirements of the demand. *Charter Co.*, 971 F.2d at 1580. This claim did none of these things. It is therefore barred as a matter of law. *See also Ginsburg v.*

[2] The Service's regulations explain what must be in a duly filed claim for refund. "The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the [Service] of the exact basis thereof." 26 C.F.R. § 301.6402-2(b)(1). And if the claim for refund "does not comply with" the duly filed requirement, it "will not be considered for any purpose as a claim for refund or credit." *Ibid.*

*United States,* 17 F.4th 78, 85 (11th Cir. 2021) ("Section 7422(a) makes 'the proper filing of an administrative refund claim a condition precedent to bringing a lawsuit for a refund.' . . . The section 7422(a) exhaustion requirement 'permit[s] the [Service] to correct claimed errors in the first instance and, if disagreement persists, to limit the litigation to the issues which have been reexamined by the [Service] and which [it] is prepared to defend.' . . . When Ginsburg filed his claim for refund with the Service, he could have—but didn't—raise that there was no signature on the penalty notice from an immediate supervisor even though section 6751(b)(1) prohibited the Service from assessing a penalty 'unless the initial determination of such assessment [was] personally approved (in writing) by the immediate supervisor of the individual making such determination.' . . . Because the district court was limited to the grounds Ginsburg raised in his claim for refund, and because the supervisory approval argument wasn't exhausted before the Service, the district court rightly didn't consider it in Ginsburg's refund lawsuit.") (citations omitted).

The second theory is the reasonable-cause defense to the penalty. Neither the Form 843 statement nor the amended return asserted reasonable cause. The claim disputed the section 6662 penalty by amount alone, and it never identified the professional advice on which the Plaintiff now relies. That omission is also fatal for the same reason as the first.

On this second question, the Eleventh Circuit's decision in *Ginsburg* is directly on point. The taxpayer there paid a forty-percent gross-valuation-misstatement penalty under section 6662(h) (the same penalty at issue here) and his refund claim

*did* assert reasonable cause and good-faith reliance on professional advice. 17 F.4th at 83. But once litigation ensued he raised a different penalty defense: that no supervisor had approved the penalty in writing, as 26 U.S.C. § 6751(b)(1) requires. *Id.* at 84. The Eleventh Circuit held that the district court was right to find that it could not consider it, "[b]ecause the district court was limited to the grounds Ginsburg raised in his claim for refund, and because the supervisory approval argument wasn't exhausted before the Service." *Id.* at 85.

So from *Ginsburg* there can be no dispute that the variance doctrine reaches penalty defenses, not merely affirmative grounds for refund. And it reaches them at the level of the particular defense asserted, not at the level of the general subject of penalties. The taxpayer in *Ginsburg* lost although he had raised reasonable cause administratively. The Plaintiff here did not raise it at all. It is, for certain, not able raise the issue now once litigation ensued.

Nor does 26 U.S.C. § 7491(c) supply an answer. That provision places on the Service "the burden of production in any court proceeding with respect to the liability of any individual for any penalty," and it does so "[n]otwithstanding any other provision of this title." A taxpayer might read the notwithstanding clause to displace the exhaustion requirement of section 7422(a). *Ginsburg* rejected that reading. A notwithstanding clause overrides *conflicting* provisions, and there is no conflict between these two: section 7491(c) allocates a burden in court, while section 7422(a) governs what may be brought to court at all. Section 7491(c) therefore "applies to the limited litigation issues that have been exhausted and are now in court, and puts the

burden of production on the Service as to the exhausted issues." 17 F.4th at 85. Reasonable cause was not among them.

Plaintiff's remaining points do not carry the day. It suggests that the Service learned enough during the examination to be on notice of both theories. Even assuming it did, an "oral claim, even if it gives actual notice to an Internal Revenue Service employee that a refund is being filed, is not valid." *Vintilla v. United States*, 931 F.2d 1444, 1446 (11th Cir. 1991). Where a taxpayer's representatives conveyed a theory to examining agents in meetings and telephone conversations, this District has held the theory barred all the same, because "[t]he law requires the taxpayer to do more than give the government a good lead." *Hawco Equities, Inc. v. United States*, 2000 WL 1479076, at *4 (S.D. Fla. Aug. 28, 2000) (quoting *Charter*, 971 F.2d at 1579-80). The burden does not shift to the Service to develop a claim the taxpayer never made. *Shleifer*, 2025 WL 1635367, at *7.

Nor has the United States waived the point. The Commissioner may waive the specificity the regulation demands, but only where the intention to do so is unmistakable. *Angelus Milling Co. v. Commissioner*, 325 U.S. 293, 295-99 (1945). Here the United States raised variance affirmatively in its cross-motion and has pressed it repeatedly since. This is not a case in which the defense surfaced for the first time on the eve of judgment.

In sum, this codified doctrine is not a technicality in search of a purpose. It exists so that the Service can investigate a claim before it becomes a lawsuit, and so that the dispute a court resolves is the dispute the agency was given the chance to

resolve without one. The Plaintiff had that opportunity as to three grounds, and he took it. He did not take it as to these two. So the United States's motion for summary judgment should be Granted as to these two issues Plaintiff has tried to inject into the litigation.[3]

### *D. The Step-up and the Penalty Follow the Section 2036 Trial*

What remains is derivative of the inclusion question. The Section 1014 step-up exists only if the Property was included in the gross estate; because inclusion must be tried, the step-up cannot be decided now. The Section 6662(h) gross-valuation-misstatement penalty presupposes that no step-up was available and that the reported basis was therefore overstated; it too must wait on the outcome of the trial. *See* 26 U.S.C. § 6662(e), (h); *United States v. Woods*, 571 U.S. 31, 46 (2013); *Curtis Inv. Co. v. Commissioner*, 909 F.3d 1339, 1350-51 (11th Cir. 2018). With the reasonable-cause defense jurisdictionally barred, the penalty now rises or falls with

---

[3] A word on the form of the disposition. The Eleventh Circuit continues to describes the variance rule in jurisdictional terms, and the Court follows that description. *Charter*, 971 F.2d at 1579 ("Federal courts have no jurisdiction to entertain taxpayer allegations that impermissibly vary or augment the grounds originally specified by the taxpayer in the administrative refund claim."); *Ginsburg*, 17 F.4th at 84. The label does not drive the outcome. Even if the exhaustion requirement of section 7422(a) were better understood as a mandatory exhaustion of remedies claim-processing rule than as a limit on jurisdiction, a question this Court finds persuasive but has no occasion to take up, the United States raised the defense in its cross-motion and preserved it. *See Boechler, P.C. v. Commissioner,* 142 S. Ct. 1493, 1497 (2022) ("we have endeavored 'to bring some discipline' to use of the jurisdictional label. . . . To that end, we treat a procedural requirement as jurisdictional only if Congress 'clearly states' that it is.") (holding that Service Code § 6330(d)(1) setting 30-day time period for filing petition to review collection due process determinations were not jurisdictional) (citations omitted). The two theories would fail on that defense just the same. The result does not depend on the characterization.

inclusion alone: if the Plaintiff proves at trial that the Property was includable, the step-up defeats the penalty; if it does not, the reported basis was overstated, the penalty applies under *Woods* and *Curtis Investment*, and no reasonable-cause defense remains to soften it.

## *IV. CONCLUSION*

A qualified personal residence trust asks an estate-planning grantor to strike a bargain: give up the home, and if you outlive the term, either leave or pay a genuine rent to stay. Whether Judge Palermo kept his side of that bargain by, in substance, duly surrendering his home or, instead, merely papered over his continued enjoyment of it thus negating the trust, are fact-laden questions on which this case turns. We cannot resolve those questions on summary judgment before trial.

Accordingly, it is respectfully **RECOMMENDED** as follows:

1. The Plaintiff's Motion for Summary Judgment [D.E. 30] should be **DENIED**.
2. The United States' Cross-Motion for Summary Judgment [D.E. 33] should be **GRANTED** in part and **DENIED** in part.
3. The Plaintiff's inclusion theory under Section 2033 should be **REJECTED** as a matter of law, and its cessation-of-use and reasonable-cause theories should be **BARRED** for lack of jurisdiction under the variance doctrine.
4. The case should proceed to trial on inclusion under Section 2036(a)(1): that the Property is includable in the gross estate because the decedent

occupied it at less than fair market rent, with the Section 1014 step-up and the Section 6662 penalty to follow that determination.

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 17th day of August, 2026.

EDWIN G. TORRES
United States Magistrate Judge